UNITED STATES, Appellee

v.

Gerald R. PFLUEGER III, Lance Corporal
U.S. Marine Corps, Appellant

No. 05-0139

Crim. App. No. 200400213

United States Court of Appeals for the Armed Forces

Argued May 1, 2007

Decided June 21, 2007

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Lieutenant Richard H. McWilliams, JAGC, USNR
(argued); Captain Jeffrey S. Stephens, USMC (on brief).


For Appellee:  Lieutenant David H. Lee, JAGC, USN (argued);
Commander Paul C. LeBlanc, JAGC, USN, and Captain Roger E.
Mattioli, USMC (on brief).


Military Judge:  Kenneth B. Martin


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Pflueger, No. 05-0139/MC

Chief Judge EFFRON delivered the opinion of the Court.

A special court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of making a false official statement, larceny from another Marine (four specifications), and obstructing justice, in violation of Articles 107, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921, 934 (2000). The sentence adjudged by the court-martial included a bad-conduct discharge, confinement for four months, and reduction to the lowest enlisted grade.

The convening authority approved the findings and sentence. In addition, the convening authority suspended two parts of the sentence for a period of twelve months: (1) all confinement in excess of ninety days and (2) the bad-conduct discharge. With respect to the two suspended parts of the sentence, the convening authority directed that "the suspended portion of the sentence will be remitted without further action" at the end of the twelve-month suspension period "unless sooner vacated."

The suspended portions of the sentence, including the bad-conduct discharge, were remitted at the end of the twelve-month period. United States v. Pflueger, No. NMCCA 200400213, 2006 CCA LEXIS 328, at 5, 2006 WL 4571401, at *1 (N-M. Ct. Crim. App. Dec. 5, 2006). Subsequently, the Navy-Marine Corps Court of Criminal Appeals reviewed the case. The court noted that nearly

a year passed between the adjudication of the sentence and the convening authority's action, and that "[i]t then took over three years to forward the case" for appellate review. United States v. Pflueger, No. NMCCA 200400213, slip op. at 2 (N-M. Ct. Crim. App. Jul 30, 2004). The court described this "unexplained" delay as "both unreasonable and unconscionable" and determined that sentencing relief was appropriate. Id. (citing United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002)). The court concluded: "Accordingly, we affirm the findings and that portion of the sentence that extends to confinement for 4 months and reduction to pay grade E-1." Id. As a result, the court approved the sentence adjudged by the court-martial except for the bad-conduct discharge. Id.

On Appellant's petition to our Court, we granted review of the following issue:

> WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS AWARDED MEANINGFUL SENTENCE RELIEF (NOT AFFIRMING AN AUTOMATICALLY REMITTED BAD-CONDUCT DISCHARGE) AFTER IT FOUND SENTENCING RELIEF TO BE APPROPRIATE UNDER UNITED STATES v. TARDIF, 57 M.J. 219 (C.A.A.F. 2002) FOR UNREASONABLE POST-TRIAL DELAY.

60 M.J. 464 (C.A.A.F. 2005).

After receiving the briefs of the parties and conducting oral argument, we remanded the case to the court below for further consideration of issues related to the question of meaningful relief. 61 M.J. 272 (C.A.A.F. 2005). The court

3

below affirmed its prior decision.  Pflueger, 2006 CCA LEXIS
328, at *9, 2006 WL 4571404, at *3.  We granted review of
Appellant's petition regarding the adequacy of the remedy
provided by the Court of Criminal Appeals.  64 M.J. 437
(C.A.A.F. 2007).


## I.   BACKGROUND

### A.   REMEDIAL ACTION FOR UNREASONABLE POST-TRIAL DELAY

In the course of conducting sentence appropriateness review
under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000), the Courts
of Criminal Appeals have "broad discretion to grant or deny
relief for unreasonable or unexplained [post-trial] delay . . .
."  United States v. Bodkins, 60 M.J. 322, 324 (C.A.A.F. 2004).
In the present case, the lower court concluded that sentence
relief was warranted as a result of "unreasonable and
unconscionable" post-trial delay.  Pflueger, No. NMCCA
200400213, slip op. at 2.  Appellant contends that the lower
court's disapproval of the adjudged bad-conduct discharge did
not constitute meaningful relief under the circumstances of this
case.  Whether the action taken by the lower court provided
meaningful relief is a question of law that we consider under a
de novo standard of review.

The issue of relief from an adjudged bad-conduct discharge
implicates the procedures for automatic forfeitures and the

4

procedures for review and execution of a punitive discharge. The following sections summarize the applicable procedures.

## B. AUTOMATIC FORFEITURES IN CASES INVOLVING A PUNITIVE SEPARATION

A court-martial sentence that includes specified punishments, including a bad-conduct discharge, triggers automatic forfeitures of pay and allowances under Article 58b, UCMJ, 10 U.S.C. § 858b (2000). See United States v. Emminizer, 56 M.J. 441, 443 (C.A.A.F. 2002) (discussing the legislative background of Article 58b).

Just as automatic forfeitures are triggered by specific types of court-martial sentences, there is a comparable provision for return of automatic forfeitures to the servicemember under specified circumstances. Amounts that were subject to automatic forfeitures "shall be paid" to the servicemember if the sentence is: (1) "set aside"; (2) "disapproved"; or (3) "as finally approved, does not provide for" one of the punishments that triggers automatic forfeitures -- death, confinement for more than six months, or confinement for six months or less and a punitive separation. Article 58b(c), UCMJ; see Article 58b(a)(2). The statute does not expressly identify the stage of the court-martial review process at which a sentence is "finally approved," or no longer

5

"provide[s] for a punishment" that triggers mandatory

forfeitures.

### C.  REVIEW AND EXECUTION OF SENTENCES INVOLVING A PUNITIVE SEPARATION

The procedure for review and execution of sentences

involving a punitive separation provides the foundation for

considering when automatic forfeitures are returned to a

servicemember.  The following summarizes the review process for

a case involving a punitive separation in which the

servicemember has not waived appellate review.  See Articles 61,

and 66, UCMJ, 10 U.S.C. §§ 861, 866 (2000).

### 1.  Review of Sentences Involving a Punitive Separation

The initial responsibility for reviewing a court-martial

sentence rests with the convening authority, who has the

authority to modify the sentence so long as the severity of the

punishment is not increased.  Article 60(c)(1), UCMJ, 10 U.S.C.

§ 860(c)(1) (2000); Rule for Courts-Martial (R.C.M.) 1107(d).

In acting on a sentence, the convening authority "may approve,

disapprove, commute, or suspend the sentence in whole or in

part."  Article 60(c)(2), UCMJ.  The convening authority also

may remit all or part of any unexecuted part of a sentence,

except for death.  Article 74, UCMJ, 10 U.S.C. § 874 (2000).

When the convening authority suspends execution of all or part

of the sentence, successful completion of a period of suspension

results in automatic remission of the suspended portion of the sentence.  R.C.M. 1108.

When a punitive separation is approved by the convening authority, the case is reviewed by the appropriate Court of Criminal Appeals under Article 66.  Thereafter, a case may be reviewed by our Court under Article 67, UCMJ, 10 U.S.C. § 867 (2000).  The Supreme Court may grant review upon petition of either party.  Article 67a, UCMJ, 10 U.S.C. § 867a (2000).  Otherwise, after this Court has acted on a case, it is returned either to the Court of Criminal Appeals or the convening authority (unless there is to be action by the President or Service Secretary) to act in accordance with this Court's decision.  Article 67(e), UCMJ.  Suspension or remission of all or a part of a sentence does not affect appellate jurisdiction.  Steele v. Van Riper, 50 M.J. 89, 92 (C.A.A.F. 1999).

2.  Execution of a Sentence to a Punitive Separation

Direct judicial review provides the "final judgment as to the legality of the proceedings" in a case involving a punitive separation.  Article 71(c)(1), UCMJ, 10 U.S.C. § 871(c)(1) (2000).  The determination that a proceeding was lawful, however, does not constitute the final action on the sentence in a case involving a punitive separation.  After legal review is completed, a punitive separation is further reviewed as a matter of executive discretion under Article 71.  That portion of a

sentence providing for dismissal of an officer may not be executed until "approved by the Secretary concerned."  Article 71(b), UCMJ; see R.C.M. 1113(c)(2).  With respect to enlisted personnel, a dishonorable or bad-conduct discharge may be ordered executed only by "the officer then exercising general court-martial jurisdiction over the accused" except as otherwise prescribed by the Secretary concerned.  R.C.M. 1113(c)(1); see Article 71(c)(1), UCMJ.  That officer has the power to remit or suspend any unexecuted portion of the sentence.  Article 74, UCMJ.

## II.  DISCUSSION

The granted issue asks whether the lower court provided Appellant with meaningful sentence relief under Tardif.  We examine this question by comparing Appellant's case to the situation he would have faced had the lower court found no Tardif error.  In both cases, the executed sentence would not include a bad-conduct discharge.  According to the lower court, this result flows from its decision to not affirm the bad-conduct discharge.  2006 CCA LEXIS 328, at *8-9, 2006 WL 4571401, at *3.  If the lower court had found no Tardif error, however, the same result would occur because the convening authority had remitted the bad-conduct discharge.  Thus, with

respect to the bad-conduct discharge itself, the decision of the lower court did not provide Appellant with meaningful relief.

Because the adjudged bad-conduct discharge triggered automatic forfeitures under Article 58b(a), we also consider whether the lower court's action affected those forfeitures in a manner that provided Appellant with meaningful relief under the circumstances of the present case. The lower court noted that the adjudged sentence included a bad-conduct discharge, and that the convening authority's decision to remit the discharge did not have the effect of removing the discharge from the sentence reviewed by the lower court. 2006 CCA LEXIS 328, at *5, 2006 WL 4571401, at *20. The court observed that the bad-conduct discharge, having been remitted by the convening authority, could not be executed, but found that to be of no import because the discharge remained in the adjudged sentence. Id. On that basis, the lower court concluded that its decision to not affirm the bad-conduct discharge provided meaningful relief because the court's action served as the basis for return of automatic forfeitures, citing the Dep't of Defense, DoD 7000.14-R, Financial Management Regulation, Volume 7A: Military Pay Policy and Procedures – Active Duty and Reserve Pay, ch. 48, para. 480306.D. (Feb. 1999, incorporating changes through Dec. 2006). 2006 CCA LEXIS 328, at *7-*8, 2006 WL 4571401 at *3. The Government contends that this action provided meaningful relief

because the bad-conduct discharge would have remained in the sentence approved by the appellate courts absent the lower court's decision to not include the discharge in the approved sentence.

The statutory requirement for return of forfeitures in Article 58b, however, is not limited to actions by judicial authorities or a determination that a punishment has been "disapproved." The statute also provides for return of forfeitures when the sentence "as finally approved, does not provide for" the punishment that triggered the automatic forfeitures -- in this case, the bad-conduct discharge.

As noted in Section I.C.2, supra, judicial review constitutes final review of the legality of the proceedings, not final approval of a punitive separation. In the case of an officer, a punitive separation must be expressly approved by the Service Secretary, and, in the case of an enlisted person, a punitive separation cannot be executed until so ordered by the officer then exercising general court-martial convening authority over the servicemember at the time that legal review has been completed. Article 71(b), (c), UCMJ.

The lower court recognized that Appellant's bad-conduct discharge could not be executed even if the lower court did not find Tardif error because it had been remitted by the convening authority. 2006 CCA LEXIS 328, at *5, 2006 WL 4571401, at *2.

The lower court concluded, however, that determinations with respect to execution of the sentence would have no impact on the return of forfeitures under Article 58b(c).  2006 CCA LEXIS 328, at *8-9, 2006 WL 4571404, at *3.  The lower court's interpretation of Article 58b(c), however, did not address the requirement for action on a bad-conduct discharge by executive branch officials under Article 71.  Article 58b(c), on its face, does not limit the final approval language to actions taken by judicial authorities prior to review under Article 71.  Likewise, the DoD Financial Management Regulation cited by the lower court and by the Government do not contain such a limitation with respect to return of automatic forfeitures.  Moreover, those regulations do not carve out an exception with respect to return of automatic forfeitures for cases in which a convening authority has ordered remission and the sentence, as executed, does not include a punitive separation.  Accord R.C.M. 1108(a) ("Remission cancels the unexecuted part of a sentence to which it applies.").

Although not addressed by the lower court or the parties, we observe that Article 71(b) requires that the punitive separation of an officer be "approved" by the Service Secretary before execution, while Article 71(c) and R.C.M. 1113(c) require the convening authority to order execution of the punitive separation of an enlisted member.  We have considered whether

11

these differences in Article 71 have an import with respect to the meaning of the phrase "as finally approved" in Article 58b(c). Although the word "approved" does not appear in the enlisted separation language of Article 71(c), a convening authority acting under that section must take affirmative action to order a punitive separation, and has discretion to not do so. See R.C.M. 1113(c); Article 74, UCMJ. Moreover, if we were to find significance in the use of the word "approved" in Article 71(b) regarding officers for purposes of interpreting Article 58b(c), such an interpretation would mean that officers would receive a return of forfeitures upon favorable executive branch action under Article 71, but enlisted persons would not receive the benefit of such action. Although there are important elements of military life in which Congress has provided for distinctions between enlisted personnel and officers, there is nothing in the purpose or structure of Article 58b(c) indicating that Congress used the words "finally approved" to deny enlisted personnel the return of forfeitures in situations where such a return would occur for officers.

In summary, we hold that actions taken by executive branch authorities in the course of acting on a punitive separation under Article 71 are pertinent to the nature of a sentence finally approved for purposes of Article 58b(c). When a punitive separation has been remitted, and consequently cannot

12

be executed under Article 71, the servicemember is entitled to relief under Article 58b(c).  In that context, the decision by the lower court to disapprove Appellant's bad-conduct discharge did not provide him with meaningful relief under Tardif.

## III.  DECISION

The December 5, 2006 decision of the Navy-Marine Corps Court of Criminal Appeals is reversed.  The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals to determine and award meaningful sentence relief to Appellant pursuant to its powers under Article 66(c) and the principles set forth in United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002).