*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

——————————

## UNITED STATES
Appellee

**v.**

## Michael A. VALENTIN-ANDINO, Airman First Class
United States Air Force, Appellant

**No. 24-0208**
Crim. App. No. 40185

Argued January 14, 2025—Decided March 31, 2025

Military Judges: Charles E. Wiedie (arraignment),
Willie J. Babor (trial), and Dayle P. Percle (remand)

For Appellant: *Major Trevor N. Ward* (argued); *Lieutenant Colonel Allen S. Abrams.*

For Appellee: *Major Regina Henenlotter* (argued); *Colonel Matthew Talcott, Lieutenant Colonel Jenny A. Liabenow*, and *Mary Ellen Payne*, Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

——————————

Chief Judge OHLSON delivered the opinion of the Court.

Appellant was convicted of sexual assault and sentenced—in relevant part—to a reduction in grade to E-1. Appellant appealed, but resolution of his appeal was delayed for more than three years (i.e., 1,115 days) because of processing missteps by the Government. These circumstances led Appellant to claim that he was entitled to sentencing relief because of the Government's unreasonable post-trial delay. The United States Air Force Court of Criminal Appeals (CCA) agreed with Appellant and found that relief was warranted under Article 66(d)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(2) (2018), or *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). However, the CCA's sentencing relief solely consisted of modifying Appellant's reduction in grade from E-1 to E-2. Before this Court, Appellant argues that the phrase "appropriate relief" in Article 66(d)(2) required the CCA to award "meaningful" relief, and thus, the CCA erred when it only gave him meaningless relief which had no practical benefit. We disagree.

Applying the common definition of the term "appropriate" to the plain text of Article 66(d)(2), we conclude that the phrase "appropriate relief" means that—*if* a CCA decides to grant sentencing relief—it must merely ensure that the relief it grants is suitable under the facts and circumstances of the case. To be clear, "appropriate relief" may indeed provide an appellant with a meaningful and tangible benefit, but the language of Article 66(d)(2) does not mandate that result. Therefore, in the instant case, the CCA did not err in its chosen remedy. Accordingly, the CCA's decision is affirmed.

## I. Background

The Government charged Appellant, an Airman First Class (E-3) stationed at Royal Air Force Lakenheath, United Kingdom, with one specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2018). Contrary to his pleas, a panel of officer and enlisted

members sitting as a general court-martial convicted Appellant. The members sentenced Appellant to ninety days of confinement, a reduction in grade to E-1, and a dishonorable discharge. The convening authority took no action on the findings and sentence, and in June 2021, the military judge entered judgment.

Appellant appealed his conviction and his case was docketed at the CCA in October 2021. *United States v. Valentin-Andino*, 83 M.J. 537, 540 (A.F. Ct. Crim. App. 2023). In January 2023, the CCA remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, because the Government had submitted an incomplete record of trial. *Id.* at 544. In April 2023, a supplemented record of trial was re-docketed at the CCA, but it again was incomplete. *United States v. Valentin-Andino*, No. ACM 40185 (f rev), 2024 CCA LEXIS 223, at *11, 2024 WL 2873773, at *4 (A.F. Ct. Crim. App. June 7, 2024) (unpublished). In September 2023, the CCA ordered the Government to show cause why it should not remand the case again. *Id.*, 2024 WL 2873773, at *4. However, in October 2023, the Government provided the missing documents, rendering further remand unnecessary. *Id.* at *12-13, 2024 WL 2873773, at *4. By this time, Appellant claimed that the Government's dilatory processing of his appeal justified sentencing relief either under his due process right to speedy appellate review or under Article 66(d), UCMJ, which authorizes a Court of Criminal Appeals to grant relief for unreasonable post-trial delay. *Id.* at *3, *15, 2024 WL 2873773, at *1, *5.

The CCA found no due process violation in this case. *Id.* at *15, 2024 WL 2873773, at *5. However, it agreed with Appellant that the Government's unreasonable post-trial delay warranted relief under Article 66(d)(2), or *Tardif. Id.* at *16, 2024 WL 2873773, at *5. Specifically, the lower court reasoned that "the totality of the Government's repeated errors regarding the record demonstrates gross indifference to post-trial processing in this case which impacted timely processing." *Id.* at *17, 2024 WL 2873773, at *6. In its opinion, the CCA underscored that "this case is not an aberration." *Id.*, 2024 WL 2873773, at *6. Indeed,

the lower court opined that Appellant's case represented a "systemic problem indicating institutional neglect" in the Air Force. *Id.*, 2024 WL 2873773, at *6. In support of this conclusion, the CCA cited sixteen cases it remanded in "fiscal year 2023 . . . due to incomplete records of trial." *Id.* at *17-18, 2024 WL 2873773, at *6 (collecting cases). Based on this institutional neglect and the "facts and circumstances of Appellant's case," the CCA decided to modify Appellant's sentence pursuant to Article 66(d)(2). *Id.* at *19, 2024 WL 2873773, at *7. It did so by changing Appellant's reduction in grade from E-1 to E-2. *Id.*, 2024 WL 2873773, at *7.

After the CCA issued its decision, this Court granted review of two issues:

> I. Whether "appropriate relief" for excessive post-trial delay under Article 66(d)(2), UCMJ, also requires "meaningful relief[.]"
>
> II. Whether the Air Force Court erred by failing to award "meaningful relief" despite finding that relief was warranted pursuant to Article 66(d)(2), UCMJ, and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), for unreasonable post-trial delay.

*United States v.* Valentin-*Andino*, 85 M.J. 152 (C.A.A.F. 2024) (order granting review). As will be seen, we answer both issues in the negative.

## II. Standards of Review and Applicable Law

"The scope, applicability, and meaning of Article 66(d), UCMJ, is a matter of statutory interpretation that we review de novo." *United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citing *United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016)).

Before the implementation of the Military Justice Act of 2016 [hereinafter MJA 2016][1] in January 2019, Article 66(c) granted a Court of Criminal Appeals the statutory

---

[1] The MJA 2016 is a division of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001-5542, 130 Stat. 2000, 2894-2968 (2016).

authority to "affirm only . . . the sentence or such part or amount of the sentence, as [the court] finds correct in law and fact and determines, on the basis of the entire record, should be approved." 10 U.S.C. § 866(c) (2012). The MJA 2016 amended Article 66 by moving this language to a different section—Article 66(d)(1)—and adding a new section—Article 66(d)(2). The latter section provides in pertinent part that a Court of Criminal Appeals "may provide *appropriate relief* if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record." Article 66(d)(2), UCMJ (emphasis added).

"The first step [in statutory interpretation] is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (citations omitted) (internal quotation marks omitted); *see also United States v. Schloff*, 74 M.J. 312, 314 (C.A.A.F. 2015) (finding "no basis to apply the canons" of statutory interpretation where the statutory language was unambiguous).

Whether statutory language is ambiguous "is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). And where a statute does not define a relevant phrase, "we must seek to discern its ordinary meaning through an analysis of its constituent words." *United States v. Badders*, 82 M.J. 299, 303 (C.A.A.F. 2022). When a common word or phrase in a statute lacks a unique legal meaning, a court may consult a lay dictionary in the course of defining it. *Brackett v. Focus Hope, Inc.*, 753 N.W.2d 207, 211 (Mich. 2008). For example, in the recent case of *Wooden v. United States*, the Supreme Court used lay dictionaries to define the word "occasion." 595 U.S. 360, 367 (2022).

### III. Discussion

Appellant takes the position that the CCA correctly concluded both that the Government engaged in excessive post-trial delay in the processing of his court-martial and that Appellant was therefore entitled to relief. However, Appellant then goes on to argue that the CCA erred when the only relief it afforded Appellant was a modification in his reduction in grade from E-1 to E-2. As noted in the defense brief:

> The practical impact of this adjustment is meaningless. In addition to the reduction in grade, A1C Valentin-Andino was sentenced to [ninety] days of confinement and a dishonorable discharge—neither of which were adjusted by the [CCA]. This means that A1C Valentin-Andino received no benefit from the adjusted rank reduction, to include pay or allowances, due to total forfeitures of pay that operated as a matter of law. 10 U.S.C. § 858b(a).[2]

Appellant then argues that by providing only this "meaningless"[3] relief, the CCA violated its duty to provide

---

[2] Article 58b(a)(1) provides that the court-martial sentence applicable to Appellant's case "shall result in the forfeiture of pay, or of pay and allowances, due that member during any period of confinement . . . . The pay and allowances forfeited, in the case of a general court-martial, shall be all pay and allowances due that member during such period." 10 U.S.C. § 858b(a)(1) (2018). Additionally, by operation of Article 58a(a), UCMJ, 10 U.S.C. § 858a(a) (2018), "[a] court-martial sentence of an enlisted member in a pay grade above E-1 . . . that includes . . . [a] bad conduct discharge . . . reduces that member to pay grade E-1, if such reduction is authorized by regulation prescribed by the President."

[3] In its brief, the Government seeks to make the argument that the CCA's modification of Appellant's reduction in rank was not, in fact, "meaningless." Specifically, the Government asserts the following: "In this case, restoring Appellant's grade to E-2 does provide Appellant with some benefit going forward. Appellant will no longer have the stigma of separating from the military as only an E-1; instead, his records will reflect that he was

"appropriate" relief under the express terms of Article 66(d)(2). In essence, Appellant equates "appropriate" relief with "meaningful" relief. In assessing the merits of Appellant's argument, we begin by noting that the applicable statute does not say that a CCA must provide "meaningful" relief or "tangible" relief; rather, Article 66(d)(2) solely says that a CCA "may provide *appropriate* relief if the accused demonstrates . . . excessive delay in the processing of the court-martial." (Emphasis added.)

We next observe that "appropriate" is an unambiguous word with an easily graspable meaning. As even Appellant concedes in his brief, dictionaries uniformly define "appropriate" as that which is suitable or right for a particular situation. *See Appropriate*, *Merriam-Webster Collegiate Dictionary* (11th ed. 2020) (defining "appropriate" as "especially suitable or compatible"); *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/appropriate" (last visited Mar. 27, 2025) (defining "appropriate as "suitable or right for a particular situation or occasion"); *The Britannica Dictionary*, https://www.britannica.com/dictionary/appropriate (last visited Mar. 27, 2025) (defining "appropriate" as "right or suited for some purpose or situation").

This understanding of the word "appropriate" contrasts with the definition of the word "meaningful." The word "meaningful" is defined as having a meaning or purpose, or imparting value. *See Meaningful*, *Merriam-Webster Collegiate Dictionary* (11th ed. 2020) (defining "meaningful" as "having a meaning or purpose"); *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/meaningful (last visited Mar. 27, 2025) (defining "meaningful" as "important or valuable"); *The Britannica Dictionary*, https://www.britannica.com/dictionary/meaningful (last visited Mar. 27, 2025) (defining "meaningful" as "having real importance or value").

---

separated as an E-2." Because of our disposition of this case, we need not address the Government's contention.

Therefore, the phrase "appropriate relief" is not synonymous with "meaningful relief."

In addition, these two different terms do not have the same practical effect in the context of Article 66(d)(2). Meaningful relief consisting of a tangible benefit may not be suitable for a particular situation, such as when it would result in a windfall to an appellant. However, we wish to make it clear that when a CCA provides "appropriate relief," that relief may, of course, include relief that is meaningful. We merely hold that under the plain language of Article 66(d)(2), it need not do so.

In striving to convince us to the contrary, Appellant makes two main arguments. First, Appellant urges this Court to invoke and apply a number of canons of statutory construction that would aid his cause. We decline his invitation to do so. Rather, we will and must comply with the following admonition from the Supreme Court:

> [I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted) (internal quotations marks omitted).

Second, Appellant contends that because this Court in *United States v. Pflueger*, 65 M.J. 127 (C.A.A.F. 2007), required meaningful relief under the principles set forth in *Tardif*, and because Congress amended Article 66 after our *Pflueger* decision, we should presume that Congress used the term "appropriate relief" to impose a meaningful standard. However, this approach directly contradicts the "cardinal" canon of statutory construction cited above. *Germain*, 503 U.S. at 253-54. Thus, because Congress chose to use the term "appropriate relief" in Article 66(d)(2), and because this phrase is clear and unambiguous, our "sole

function" is to enforce Article 66(d)(2) "according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citation omitted) (internal quotation marks omitted).[4]

As a final point, we note that at oral argument Appellant's counsel argued that even if appropriate relief is not equated with meaningful relief, a Court of Criminal Appeals must provide an explanation for why meaningful relief was inappropriate under the circumstances. However, neither Article 66(d)(2)'s plain language nor any other provision in the *Manual for Courts-Martial* imposes such a requirement, and we will not create such a rule out of thin air. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654-55 (2020) ("If judges could add to, remodel, update, or detract from . . . statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives."). Therefore, we conclude

---

[4] On this point, Appellant also proffers that because the 2019 version of Article 66(d)(1) "mirrors the 2000 version of Article 66(c)" that *Tardif* was based on, the CCA was required to reward meaningful relief. However, "[i]t is fundamental that a general statutory provision may not be used to nullify or to trump a specific provision, irrespective of the priority of enactment." *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1013 (9th Cir. 2000) (stating that a general statutory rule does not govern unless there is no more specific rule (citing *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989))). Article 66(d)(2) is a specific provision incorporated to govern errors of excessive delay in post-trial processing, and we will not undermine its express limitations by grafting onto it our case law concerning more generalized provisions. We recognize that the CCA granted relief for the Government's post-trial processing errors "under Article 66(d)(2), UCMJ, or *Tardif*." *Valentin-Andino*, 2024 CCA LEXIS 223, at *16, 2024 WL 2873773, at *5. However, the CCA erred to the extent it granted *Tardif* relief under Article 66(d)(1) because errors regarding post-trial delay are now solely governed by Article 66(d)(2). Accordingly, *Tardif* and its progeny have been superseded by Article 66(d)(2). Nevertheless, any error was harmless because the CCA had the authority to grant "appropriate relief" under Article 66(d)(2).

that although it is within a Court of Criminal Appeal's discretion to place its reasoning about Article 66(d)(2) relief on the record, it is not required to do so. *See United States v. Winckelmann*, 73 M.J. 11, 16 (C.A.A.F. 2013) ("The Court of Criminal Appeals did not detail its [sentence reassessment] analysis in this case; nor was it obligated to do so.").

## IV. Conclusion

If a Court of Criminal Appeals decides relief is warranted for excessive post-trial delay under Article 66(d)(2), that relief must be "appropriate," meaning it must be suitable considering the facts and circumstances surrounding that case. This does not require a Court of Criminal Appeals to provide relief that is objectively meaningful, and it does not obligate a Court of Criminal Appeals to explain its reasoning regarding the relief it does provide. Because Article 66(d)(2) governs post-trial delay issues after MJA 2016 went into effect, and because this provision only requires "appropriate relief," the CCA did not err when its sentencing relief solely consisted of modifying Appellant's reduction in grade from E-1 to E-2.

## V. Judgment

The decision of the United States Air Force Court of Criminals Appeals is affirmed.